COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Clements and McClanahan
Argued at Salem, Virginia


JAMES ROBERT WELCH, JR.
                                                        MEMORANDUM OPINION* BY
v.        Record No. 1427-04-3              JUDGE ELIZABETH A. McCLANAHAN
                                                              JUNE 28, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

Peter L. Boatner, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


James Robert Welch was convicted in a bench trial for having carnal knowledge of a

child between thirteen and fifteen years of age, in violation of Code §18.2-63. Welch contends

that the trial court erred in finding the evidence sufficient to convict him of this offense. For the

reasons that follow, we affirm the decision of the trial court.

I. Background

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citations omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom.'" Parks v. Commonwealth, 221 Va. 492, 498, 270

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)).

James Robert Welch, Jr., a twenty-seven-year-old man, who was previously convicted of multiple felonies, was arrested and charged with malicious wounding after stabbing a man. A fourteen-year-old female, who was the victim in the carnal knowledge charge now on appeal, was interviewed in connection with the stabbing incident. After obtaining letters written to the fourteen-year-old victim by Welch while he was incarcerated, the Augusta County Sheriff's Office began an investigation of their relationship. In one of Welch's letters to the girl, he stated:

> Well, I was doing fine till someone got into my sh--, and read your letter to me. Then Ronnie talked to one of the wifes of one of the guys in my block . . . and told her I was a baby rapist so she told her husband[. H]e told the whole jail that you and I were f---ing now I don't think I'll ever get out cause everyone is trying to kill me. . . . I do love you . . . my last thought will be of you and my last breath will say your name. . . .

After further investigation, Welch was charged with carnal knowledge of a child in violation of Code § 18.2-63.

At trial, the victim testified that she dated Welch from June through August, 2003. When asked, "Did you have any sexual relationship with Mr. Welch?," the victim responded, "Yes, sir." Afterwards, when asked "How many times would you have had a sexual relationship with him, at that location in Augusta?," the victim responded, "Over twenty." The victim testified that when she first talked to Investigator Candace Jones about her relationship with Welch, she "didn't want to tell her" and she "wasn't gonna say anything," but then she "just told her."

Lisa Smith, the victim's mother, testified that on the night Welch was arrested for the malicious wounding charge, he told Smith that she "would be angry with him," that "what [she] had suspected was true," that "he was involved with [the child]," that he "did love the [child],"

that he and the victim "were having relations," and that Welch told her that he stabbed a man because he was jealous that the man was "coming on" to the victim. Smith later testified that she suspected Welch and her daughter were having "sexual relations." Smith also testified that Welch wrote letters to her daughter and spoke to her daughter on the telephone while he was in jail.

At trial, Welch denied having a sexual relationship with the victim and testified that he merely gave her hugs and held her hand. Welch testified that the victim first told Jones that she and Welch did not have sex, but then admitted that they "had sex" because the victim thought her mother could be arrested. Welch also denied telling Smith he had "sexual relations" with the victim. Welch admitted writing letters to the victim and talking to her on the telephone while he was incarcerated for the malicious wounding charge.

## II. Analysis

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). We will not substitute our judgment for that of the trier of fact, but will determine "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Code § 18.2-63 provides:

> If any person carnally knows, without the use of force, a child thirteen years of age or older but under fifteen years of age, such person shall be guilty of a Class 4 felony. . . . For the purposes of this section . . . "*carnal knowledge*" includes the acts of sexual

- 3 -

> intercourse, cunnilingus, fellatio, anallingus, anal intercourse, and
> animate and inanimate object sexual penetration.

(Emphasis in original). Based on all of the evidence presented, particularly when viewed in the light of Welch's letter, the trial court made a finding that in this case, the terms "sexual relations," "sexual relationship," and "having sex" were used by the victim, her mother and Welch, to mean "sexual intercourse." The victim testified that when she was fourteen years old, she had a sexual relationship with Welch over twenty times at that location in Augusta County. According to Welch's testimony, the victim also stated to Jones that she and Welch had sex, after first denying it. The victim's mother testified that she suspected Welch and the victim were having sexual relations, that Welch confirmed that her suspicions were true, and that Welch admitted to her that he and the victim were having relations. Furthermore, the trial court stated, "there's no reason for me to think that this child doesn't know what 'sexual relations' means."

Welch's August 22, 2003 letter, and his motivation for the malicious wounding charge, provide the context for the trial court's interpretation that the terms "sexual relations," "sexual relationship" and "having sex" meant "sexual intercourse" to the parties. In the letter, Welch explained to the victim that, after the information in her letter to him was disclosed to an inmate, the other inmates were told he was a "baby rapist" and that he and the victim had been "f---ing." Welch also professed his love to the victim in the letter and stated "my last thought will be of you and my last breath will say your name." The trial court concluded that the victim's testimony and Welch's admission to Smith were sufficient to convict, but that Welch's letter was the "straw that [broke] the camel's back." Specifically, the trial court stated that this letter "did not have anything to do with the maiming charge," and characterized it as an attempt to dissuade the victim from testifying against him and pursuing the carnal knowledge charge. In explaining his motivation for the malicious wounding charge, Welch admitted to Smith that he was jealous and stabbed a man for coming on to the victim.

- 4 -

The trial court heard the testimony of the witnesses, observed their demeanor, and reviewed Welch's letters to the victim. In finding Welch guilty, the trial court stated, "this child is very credible; a very credible witness . . . I think this evidence is clearly -- obviously, if I believe [the victim] and her mother, the evidence is sufficient." "Witness credibility determinations shall only be disturbed on appeal if the testimony is 'inherently incredible, or so contrary to human experience so as to render it unworthy of belief.'" Sanchez v. Commonwealth, 41 Va. App. 319, 335, 585 S.E.2d 327, 335 (2003) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).

Welch offered no evidence, other than his own self-serving testimony, to rebut the victim's and her mother's testimony. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). The trial court was entitled to reject Welch's testimony.

## III. Conclusion

For these reasons, we hold that the evidence was sufficient for the trial court to convict Welch of having carnal knowledge of a child, in violation of Code §18.2-63. We, therefore, affirm his conviction.

Affirmed.

- 5 -